ANTIGO ELECTRIC COMPANY (Wisconsin Valley Power Company, successor), Appellant, vs. FAUST LUMBER COMPANY and another, imp., Respondents.

*September 14—October 11, 1932.*

For the appellant there was a brief by *Genrich & Genrich,* attorneys, and *L. A. Pradt, Jr.* of counsel, all of Wausau, and oral argument by *Mr. Fred W. Genrich* and *Mr. Pradt.*

*Ray C. Dempsey* of Antigo, for the respondents.

WICKHEM, J. Since 1882 the defendant Faust Lumber Company, hereafter referred to as the defendant, and its predecessors in title have owned and maintained, under authority of deeds and charter, a dam with an authorized seven-foot head across Spring brook, a small stream in the city of Antigo. Prior to 1923 the dam and pond were used by the defendant and its predecessors for power to operate its sawmill, also to harvest ice, and to float and store logs. By the fall of 1925 it had ceased its milling operations, removed its mills, and the property, though still maintained, was unproductive except for the harvesting of ice. The privilege of harvesting ice had been leased to the defendant R. Healey for an annual rental of $400.

For some years prior to the commencement of this action plaintiff owned and operated a steam plant with which it generated electric current, which was sold to the city of Antigo and its inhabitants. This plant adjoined the dam site of the lumber company, and was immediately below it upon the stream. Water for the cooling of its condensers was taken from Spring brook just below the lumber com-

pany's dam, and the electric company also maintained a small dam on its premises thereby creating a shallow reservoir about 14 x 300 feet in size. Prior to the commencement of this action the electric company's employees had from time to time regulated the flow of water passing through or over defendant's dam to suit the convenience of the electric company, occasionally using, in addition to the natural flow of the stream, a portion of the headwaters stored above the dam. Due to the gradual lessening of the flow of Spring brook, the withholding and diversion of water at an upper dam, and the unusually dry season of 1925, the water situation became so acute by the late fall and early winter of that year that plaintiff began to have difficulty in operating its plant. There being less than the authorized head at defendant's dam, plaintiff's continued use of water materially lowered defendant's pond, and defendant became concerned over the loss of water and spiked its dam to prevent its manipulation and further depletion of the storage water. Thereupon, on January 8, 1926, the electric company secured a temporary mandatory injunction requiring the defendants to so regulate their dam until the further order of the court as to permit a flow of water over or through and across the entire width of such dam of one inch in depth from 6:30 a.m. to 10:30 p.m., and restraining the defendants, pending the trial, from interfering with or preventing the flow of water so ordered.

On January 12, 1926, following a hearing, the mandatory injunction was continued in force but reduced the required volume of water from one inch to one-half inch to flow continuously through or over the dam. The injunction remained in force until April 24, 1928, when the plaintiff voluntarily dismissed its complaint. An order was entered appointing a referee to ascertain and report the damages of the defendant Faust Lumber Company and the defendant

Richard Healey, Sr. Upon the reference the following claims for damages were made by the defendants:

| Item. | Claimed. | | Allowed. | |
|---|---|---|---|---|
| *Faust Lumber Co.* | | | | |
| Engineer's services ............. | $489 | 84 | $252 | 44 |
| Lumber........................ | 16 | 11 | 16 | 11 |
| Labor on dam.................. | 306 | 80 | 306 | 80 |
| Photos ....................... | 5 | 74 | 5 | 74 |
| Supervision ................... | 585 | 00 | 50 | 00 |
| Loss in rentals and use .......... | 1,200 | 00 | 280 | 00 |
| Water taken 63 days @ $30...... | 1,890 | 00 | 500 | 00 |
| Attorney's fees ................ | 700 | 00 | 700 | 00 |
| | $5,193 | 49 | $2,111 | 09 |
| *R. Healey.* | | | | |
| Extra cost to harvest ice........ | $319 | 50 | $319 | 50 |

The first contention of the plaintiff is that the defendants have not proved that plaintiff took more than the natural flow of the stream, or, if it did, exactly how much it took. With respect to this the referee found contrary to plaintiff's contention, and it is our conclusion that the finding is supported by the evidence. It was admitted by plaintiff's manager that the natural flow was insufficient for plaintiff's requirements. During the time the plaintiff was using water under the terms of the injunction there was a rapid and almost total depletion of defendant's pond. The evidence points to the conclusion that, under the injunction, plaintiff took not only the natural flow, but all the storage water. The evidence is voluminous and a detailed review would perform no useful service. It is our conclusion that the referee was entitled to reject the various explanations of plaintiff, to the effect that the harvesting of ice, the withholding of water at an upper dam, and seepage, accounted for the depletion of the pond. In view of this conclusion it becomes necessary to examine the specific items allowed by the referee.

The charges for lumber necessary to modify the construction of the dam, and for labor upon the dam to conform it to the injunctional order, are not disputed as proper items of expense; neither are the charges for services of engineers, for photos, or for supervision. The fact that some of the labor and supervision was done by officers or employees of the defendant, who received no extra compensation for the work they did in connection with the dam, is immaterial. They were diverted from their ordinary occupations with the defendant in response to the injunction, and the cost of their services is a proper item of damage.

The principal questions raised by the plaintiff relate to the item for water taken, that for loss in rentals and use of property, and that for attorney's fees. Defendant claimed damages of $1,890 for water used by the plaintiff from January 11th to February 6th, under the mandatory injunction. This claim was based partly upon the amount which defendant claims plaintiff had to pay to the city of Antigo for water during the period prior to the injunction when the dam was closed, and partly upon the fact that the wrongful use of the storage water enabled the plaintiff to avoid the expenditure of approximately $2,500 for additional coal to operate its plant, due to the superiority of the water from the brook over the water furnished by the city. Plaintiff contends that no loss or damage to defendant was caused by the taking of this water, for the reason that defendant had no present use for it, either as storage water or power, and that no market for it was shown. Plaintiff further contends that the proceedings for an injunction were started in good faith, and that this fact distinguishes the situation from cases of wilful trespass, such as were involved in *Green Bay & M. Canal Co. v. Kaukauna W. P. Co.* 112 Wis. 323, 87 N. W. 864. The referee concluded that the proceedings for an injunction were not brought in good faith, and allowed the defendant's claim at $500,

which sum he estimated was approximately what plaintiff would have had to expend in purchasing water from the city of Antigo had the injunction not been in force. We deem the contention of the plaintiff to be without merit. The testimony supports the referee's conclusions that the officials of the plaintiff knew when the injunction was applied for that it was taking more than the natural flow of the stream. The complaint indicates that plaintiff was seeking to establish a prescriptive right to more than the natural flow. Under the circumstances, including the fact that the proceedings were finally abandoned, the conclusion of the referee that the action was the result of urgent need for the storage water rather than a *bona fide* claim of right must be sustained.

In view of this we think the claimed distinction between the rule of damages in cases of wilful trespass and the assessment of damages upon the dissolution of an injunction fails, and that the principles for determining the measure of damages as laid down in the case of *Green Bay & M. Canal Co. v. Kaukauna W. P. Co., supra,* must be applied here. The fact that defendant had no present use or market for the water does not preclude recovery of actual damages if the property taken was of ascertainable benefit to the plaintiff. This was the case here. The defendant had a right to impound the water. While it had no market for it, unless plaintiff elected to purchase it, the water was valuable to the plaintiff. It needed it for its condensers. The water served its purposes better than the city water because the latter was hard and the water from the brook was soft. The use of the city water required greater fuel consumption, involved repairs and other difficulties as a result of deposits of minerals in the pipes, and did not operate the machinery with the efficiency of the water from Spring brook. Under the mandatory injunction plaintiff secured defendant's storage water from January 11th to

February 6th, a period of twenty-six days. As a result, the supply of storage water was exhausted, and the level of the upper pond reduced to that immediately below the dam. From December 21st to January 11th, excepting for a few hours on December 24th, no water passed through defendant's dam, and during the period of twenty-one days plaintiff purchased water for cooling purposes from the city of Antigo at a cost of approximately $400. The referee concluded that this furnished a proper basis for ascertaining the value of water used by the plaintiff under the injunction. Using this as a basis for computation, the value of the water used during the twenty-six days would be $507. The referee considered that probably the amount paid for city water during the twenty-one days was somewhat high because the period was that of the holiday peak load. He came to the conclusion that an allowance of $500 was a fair valuation for the water taken. It would not be difficult upon the evidence, and using the basis adopted by the referee, to sustain this finding. When it is also considered that the use of the spring water was concededly more economical, required the use of less coal, and involved less repairs, it is apparent that the amount allowed by the referee was a very moderate one. It may be that the amount allowed is inadequate, but we are certain that it is not excessive.

Defendant further claimed to have been damaged by being deprived of the use of the property and its rentals for the period of about two years, during which the injunction was in force. With respect to this item of loss, plaintiff contends that the property was not in use during the period except for the harvesting of ice, which was not interrupted, and that there was no opportunity either to sell or to lease the property, or the power generated by the stream, and that consequently defendant has not been damaged. Defendant contends that it was in fact dispossessed from the use and enjoyment of its dam site for the period of two

years; that the property was worth $9,000, and that it is entitled to damages equivalent to the interest upon the sum which represents the worth of the property. The referee sustained the defendant's contention, and allowed the defendant six per cent. per year upon the valuation of $9,000, for a period of two years, making the total loss in rentals $1,080. From this sum he subtracted the ice rentals, amounting to $800, and leaving a net loss of $280. We think this item should have been wholly disallowed for the reason that there was no showing either of loss to the defendant or benefit to the plaintiff, except such benefit as may have resulted from the use of the water by the plaintiff; hence the allowance of this item is substantially a duplication of the charge for water.

The next item in question is that relating to attorney's fees, it being contended by plaintiff that the allowance for legal services included charges for services rendered upon the trial of the case on its merits. An examination of the itemized bill for attorney's fees indicates that $350 represents services in connection with securing the dissolution of the temporary injunction and the assessment of damages before the referee. The other items are properly referable to the trial of the action upon its merits. Under the rule in *Muscoda Bridge Co. v. Worden-Allen Co.* 207 Wis. 22, 239 N. W. 649, 240 N. W. 802, only the attorney's fees for services in attempting to dissolve the temporary injunction and those rendered upon the reference are allowable in damages upon the ultimate dissolution of the injunction as improvidently issued. Counsel for defendant cited numerous cases to the effect that where it is necessary to try the case upon the merits to obtain a dissolution of the injunction, the legal services involved in the preparation for trial upon the merits are allowable. An examination of the authorities reveals conflict upon this subject. The case of *Muscoda Bridge Co. v. Worden-Allen Co., supra,* considered

the authorities and laid down the rule for this state. Under this rule the defendant in the proceedings for an injunction may have allowed as attorney's fees whatever services were directed to the dissolution of the temporary injunction and the assessment of damages upon the reference. Such services as are rendered in the preparation and trial of the cause on its merits are to be recompensed by the costs which the statutes permit to be taxed by the prevailing party.

The result of the foregoing is that the judgment as to the defendant Faust Lumber Company should be modified by deducting the sum of $280 allowed for rentals and $350 attorney's fees, and as so modified should be affirmed.

With respect to, the defendant Healey there is no contention upon this appeal except that the evidence fails to show that the plaintiff took more than the natural flow of the stream, and our conclusions upon that contention require that the judgment in favor of the defendant Healey be affirmed.

*By the Court.*—Judgment modified as indicated in the opinion, and as modified, affirmed. Appellant to have costs upon this appeal.